UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEMAJIO JEROME ELLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-02637-TWP-TAB |
| | ) | |
| NOLL Doctor Mr., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant Gregg Noll's ("Dr. Noll") Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Dkt. 84). Plaintiff Demajio Jerome Ellis ("Mr. Ellis"), an inmate in the Indiana Department of Correction ("IDOC"), filed this civil rights suit alleging that Dr. Noll was deliberately indifferent to his serious medical needs by providing delayed and inadequate dental care.[1] For the reasons below, the Motion is **granted in part and denied in part**.

## I.    STANDARD OF REVIEW

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving

---

[1] Mr. Ellis also brought claims against Wexford of Indiana, LLC ("Wexford"), Warden Zatecky, and Dr. Jeffrey Pearcy ("Dr. Pearcy"). Dr. Pearcy has since died and the claims against him were dismissed, and Mr. Ellis failed to identify an appropriate substitute. (Dkt. 56.) Mr. Ellis' claims against Wexford and Warden Zatecky were dismissed on Mr. Ellis' motion. (Dkt. 100.)

party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). The court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

## II.    FACTUAL BACKGROUND

Because Dr. Noll has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party, Mr. Ellis, and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

## A.   <u>The Parties</u>

Mr. Ellis was at all relevant times an inmate within the custody of the IDOC housed at Pendleton Correctional Facility ("Pendleton").  (Dkt. 1.)  Dr. Noll was a dentist licensed to practice in the State of Indiana from 1984 to 2022, when he retired.  (Dkt. 86-1 at ¶ 1.)  During the time relevant to this lawsuit, Dr. Noll was employed as a dentist by Wexford at Pendleton.  *Id.* at ¶ 2.

The scheduling of dental appointments at Pendleton is handled by nurses, who will confer with the dentist if necessary.  (Dkt. 102 at 47.)

## B.   <u>Mr. Ellis' Dental Care from January 2019 through February 2021</u>

Mr. Ellis submitted a health care request form ("HCRF") on January 11, 2019, complaining that he had been waiting five months to be seen by a dentist.  (Dkt. 86-2 at 1.)  Staff responded to Mr. Ellis three days later, letting him know that he was on the list to be seen.  *Id.*

Mr. Ellis was seen in the dental department on March 28, 2019. *Id.* at 13. He complained of cold sensitivity, and Dr. Noll observed that Mr. Ellis' top canine teeth, teeth #6 and #11, were impacted—meaning they had not broken through his gums.  *Id.*; Dkt. 86-1 at ¶ 7.  X-rays were performed. (Dkt. 86-2 at 13.) No cavities were noted with either tooth #6 or #11, but cavities were observed in tooth #31, so Mr. Ellis was instructed to submit another HCRF to be scheduled for restoration of tooth #31.  *Id.*

Mr. Ellis submitted a HCRF on March 28, 2019, addressing the cavity in tooth #31.  *Id.* at 3.  On April 23, 2019, Dr. Noll restored tooth #31.  *Id.* at 12.  Mr. Ellis wanted a cleaning on this date, but Dr. Noll felt it prudent to address the cavity first.  (Dkt. 86-1 at ¶ 8.)

Mr. Ellis was scheduled for cleaning on May 21, 2019.  (Dkt. 86-2 at 12.)  X-rays were also performed on this date.  *Id.*  Mr. Ellis' oral hygiene was good, and no cavities were observed.  *Id.*

Mr. Ellis requested additional care at some point before August 15, 2019.[2]  He refused dental appointments on August 15, 2019, and September 5, 2019.  *Id.*  Mr. Ellis explained that he missed the dental appointments because he was too sick with leg and back pain to attend.  (Dkt. 96 at 21.)

Mr. Ellis submitted a HCRF September 9, 2019, requesting another cleaning, complaining of pain in his gums, and complaining of a "white bump" on his tongue.  (Dkt. 86-1 at 2.)  Routine cleanings were only performed once per year in IDOC and Mr. Ellis' cleaning had already been completed in May of 2019.  (Dkt. 86-1 at ¶ 11.)  Mr. Ellis was not seen again until October 17, 2019.  At that visit, Dr. Noll observed a 2.5mm lesion on the tip of Mr. Ellis' tongue. (Dkt. 86-2 at 11.) Dr. Noll suspected that it was merely an irritation fibroma, but he requested that the lesion be biopsied to rule out cancer.  *Id.*

Mr. Ellis was seen by Dr. Rob Alderman on November 21, 2019, for a biopsy of the lesion on his tongue.  (Dkt. 86-2 at 9-10.)  The lesion was a fibroma, which is a noncancerous tumor made up of connective tissue.  *Id.*; Dkt. 86-1 at ¶ 12.

Dr. Noll saw Mr. Ellis on February 6, 2020, to discuss the biopsy result.  (Dkt. 86-2 at 8.)  Dr. Noll informed Mr. Ellis that the lesion on his tongue was a benign fibroma. *Id.* Mr. Ellis believed that the fibroma was causing medical issues he was experiencing, but Dr. Noll assured him this was not the case.  *Id.*; Dkt. 86-1 at ¶ 13.

Mr. Ellis submitted a HCRF on April 16, 2020, requesting a tooth cleaning.  (Dkt. 86-1 at ¶ 14.)  Staff responded on April 20, 2020, advising him that it had not yet been a year since his last cleaning.  *Id.*; Dkt. 86-2 at 8.

---

[2] The HCRFs requesting these visits are not in the record, but a notation regarding his refusal is.

Mr. Ellis was seen for a routine cleaning on May 28, 2020.  (Dkt. 86-2 at 8.)  During this visit, Mr. Ellis requested to have his impacted canine teeth extracted because they caused him pain. *Id.*; Dkt. 102 at 2.  Dr. Noll informed Mr. Ellis that there was no clinical reason to remove the teeth, as they were in a healthy condition.  (Dkt. 86-2 at 8.)

Dr. Noll saw Mr. Ellis on July 21, 2020.  *Id.*  Mr. Ellis continued to insist that his impacted canine teeth be removed because of the pain they caused.  *Id.*  Dr. Noll submitted a request to Dr. Pearcy, Wexford's Director of Dental Services, for extraction of the teeth.  *Id.* at 7; Dkt. 102 at 43.  Dr. Pearcy denied the request for extraction.  (Dkt. 86-2 at 7.)  Dr. Noll informed Mr. Ellis of Dr. Pearcy's decision and explained to him that evidence-based dentistry did not support the extraction of these teeth, as there was no clinical indication or radiographic pathology to recommend the extraction.  *Id.*

Mr. Ellis refused dental appointments on September 2 and September 9, 2020.  *Id.*

On October 15, 2020, Dr. Noll made a note in Mr. Ellis' records stating, "Patient complains that Sensodyne toothpaste makes his discomfort worse. He states that the pain from his impacted maxillary canines affects his ability to focus and enjoy his days. I will e-mail Dr. Pearcy once again but cannot find any evidence that the impacted canines need to be extracted."  *Id.*    In Dr. Noll's professional medical opinion, there was no clinical reason to extract Mr. Ellis' impacted canine teeth.  *Id.* at ¶ 21. Dr. Pearcy denied Dr. Noll's second request for extraction of Mr. Ellis' impacted canine teeth.  *Id.* at ¶ 19; Dkt. 86-2 at 7.

Thereafter, Dr. Noll did not have any further interaction with Mr. Ellis.  (Dkt. 86-1 at ¶ 19.)

**C.**     <u>**Mr. Ellis' Dental Care after February 2021**</u>

Mr. Ellis was transferred to New Castle Correctional Facility in February 2021. ( Dkt. 1 at 7.)  At New Castle he was seen by Dr. Laurence Davis on July 23, 2021, and requested that his impacted teeth be removed.  (Dkt. 86-2 at 6.)  Dr. Laurence prescribed Mr. Ellis Ibuprofen and submitted a request for extraction.  *Id.*

Mr. Ellis was seen by Dr. Alderman on September 23, 2021, at which time Mr. Ellis reported "chronic pain" and "intense pressure" in the area of his impacted teeth.  *Id*.  Dr. Alderman extracted the impacted canine teeth that day.  *Id.* at 5.  Dr. Alderman noted there was no facial swelling, no signs of infection, and no bony pathology.  *Id.*  Dr. Alderman's notes reveal that he discussed with Mr. Ellis leaving the teeth in place for future orthodontic treatment, but Mr. Ellis told him that he was not interested in having an orthodontist bring the teeth into position.  *Id.*  Dr. Alderman noted that Mr. Ellis elected to have his teeth extracted.  *Id*.

**D.**     <u>**Mr. Ellis' Claims**</u>

Mr. Ellis attests that he informed Dr. Noll that his impacted teeth were causing him pain every time he interacted with him from March 28, 2019, through October 2020.  (Dkt. 102 at 2, ¶ 1.)  He argues that Dr. Noll should have contacted Dr. Pearcy to request the extraction earlier than he did, and he believes Dr. Noll ignored his complaints of pain because he never prescribed any pain medication.  (Dkt. 96 at 13-14, 37-38.)  He asserts Dr. Noll was aware that the pain negatively affected his daily activities, including his ability to sleep and eat. *Id.*  Although he purchased pain medication from commissary, it did not help him, and he advised Dr. Noll that neither the over-the-counter pain medication nor Sensodyne toothpaste relieved the pain. *Id.* at 16−17.  When Mr. Ellis told Dr. Noll that the toothpaste was not alleviating his pain, Dr. Noll told him to "stop

using it, and, you know, man up[.] … And he still didn't provide [Mr. Ellis] any treatment for [his] dental pain."  *Id.* at 16.

Mr. Ellis contends the cleaning he received by Dr. Noll was inadequate and contributed to his dental pain due to tartar buildup.  *Id.* at 17−18. Ever since his impacted teeth were extracted, he no longer suffers from dental-related pain.  (Dkt. 102 at 2, ¶ 3; Dkt. 96 at 34.)

Dr. Noll submitted a copy of Mr. Ellis' commissary purchases during the relevant timeframe, which show he regularly purchased food, including crunchy or hard food like chips and cookies.  (Dkt. 86-4.)

### III.    DISCUSSION

Mr. Ellis alleges that Dr. Noll was deliberately indifferent to his serious dental needs when he failed to (1) see Mr. Ellis in a timely manner; (2) properly clean his teeth; (3) remove the two impacted teeth; and (4) provide him with adequate pain management.  He further alleges that the delay in treatment caused the fibroma.

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021).  "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

### A.   Objective Element: Serious Medical Need

Dr. Noll argues that Mr. Ellis did not suffer from a serious medical need.  "A medical condition is deemed to be objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007). Further, a medical condition is serious when the failure to treat the inmate's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  Mr. Ellis' testimony that he experienced pain from his impacted teeth that negatively affected his daily activities is sufficient to create a triable issue as to this element. *Id.*; *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (noting that pain caused by tooth decay was an objectively serious medical condition).  Dr. Noll refers to Mr. Ellis' commissary purchases as proof that he was not in serious pain during these months, but Mr. Ellis snack menu simply creates a dispute of fact related to the degree of his pain.  *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 521 (7th Cir. 2019) (noting that whether plaintiff's testimony "that he was in terrible pain" was "ultimately believable is a credibility determination for the jury.") Dr. Noll's notes in his medical records acknowledge Mr. Ellis' reported pain, and he did ask Dr. Pearcy for permission to extract the teeth due to his reported pain.  (Dkt. 86-2 at 7.)  Accordingly, Dr. Noll is not entitled to summary judgment on the objective element.

### B.   Subjective Element: Deliberate Indifference to Risk of Harm

As to the subjective element, deliberate indifference requires more than negligence or even objective recklessness.  *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).  Mr. Ellis "must provide evidence that [Dr. Noll] actually knew of and disregarded a substantial risk of harm."  *Id*. The Seventh Circuit has "held that a jury can infer deliberate indifference when a treatment

decision is 'so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.'" *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (quoting *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006)). But where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently. *Id.* at 241-42. A medical professional may be found to be deliberately indifferent if he persists in a course of treatment he knows to be ineffective, or if he inexplicably delays in responding to an inmate's serious medical condition, especially "if that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020).

There is no evidence that Dr. Noll had any involvement in the initial five-month wait that Mr. Ellis experienced before he had a dental appointment at Pendleton. Rather, the undisputed evidence is that nurses are responsible for scheduling dental appointments unless they consult with the dentist. (Dkt. 102 at 47.) "Individual liability under § 1983 … requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted). Thus, Dr. Noll is entitled to summary judgment with respect to the initial delay in Mr. Ellis receiving dental treatment.

Although Mr. Ellis was dissatisfied with the quality of the dental cleaning he received at Pendleton, he has introduced no evidence that inadequate cleaning contributed to his pain or any other medical issues. Dr. Noll filled one cavity after his first visit with Mr. Ellis, and subsequent X-rays showed he had no further cavities. (Dkt. 86-2 at 12-13.) Thus, Dr. Noll is entitled to summary judgment with respect to Mr. Ellis' claims about inadequate cleaning.

Dr. Noll is also entitled to summary judgment with respect to his handling of Mr. Ellis' fibroma. Mr. Ellis reported the growth on his tongue on September 9, 2019, and Dr. Noll examined

the bump on October 17, 2019.  (Dkt. 86-1 at ¶ 11.)  Despite believing that the growth was a harmless fibroma, Dr. Noll requested that the tissue be biopsied to confirm it was not cancer.  *Id.* The tissue was biopsied a month later, and it was confirmed to be noncancerous.  *Id.* at ¶ 12.  Mr. Ellis testified that he was not sure if he understood the test results or believed that the fibroma was not cancerous, (Dkt. 96 at 28-29), but he has introduced no evidence to contradict the dentist's findings on this point.

There are disputes of fact, however, with respect to Dr. Noll's handling of Mr. Ellis' impacted teeth.  The Court defers to Dr. Noll's medical judgment that *removal* of these teeth was not needed based on his medical judgment and dentistry standards.  *Dean*, 18 F.4th at 241.  But the undisputed evidence is that Mr. Ellis reported that the impacted teeth were causing him pain, and Dr. Noll provided no pain medication or any other treatment to alleviate the pain (or to correct the impacted teeth).  Mr. Ellis attests that he first reported the pain to Dr. Noll in March 2019, (Dkt. 102 at 1, ¶ 1), but Dr. Noll did not make the initial request for Mr. Ellis to have those teeth extracted until July 2020, (Dkt. 86-2 at 8).  Dr. Pearcy rejected the requests twice.  The contents of the requests to Dr. Pearcy are not in the record, so it is unclear whether Dr. Noll conveyed Mr. Ellis' reports of pain.  Dr. Noll provides no explanation in his affidavit as to why he did not prescribe any pain medication or recommend other treatment.

Ultimately, Mr. Ellis did receive approval to have his teeth extracted in July 2021.  (Dkt. 86-2 at 6.)  The extraction of the teeth in September 2021 resolved his dental pain.  (Dkt. 96 at 34.) A jury could conclude that Dr. Noll's refusal to do anything to treat Mr. Ellis' reported pain evinced deliberate indifference.  *See Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (observing that doctor's ban on pain medication and diagnostic testing for inmate could support plaintiff's theory that "the repeated refusal to uncover or effectively treat his condition was a gratuitous cruelty,"

especially where subsequent endoscopy resulted in effective treatment); and *Berry*, 604 F.3d at
442 (noting that detainee's "steady complaints of escalating [dental] pain indicate that the delay
unreasonably prolonged [his] suffering, making summary judgment inappropriate.").

## IV. CONCLUSION

For the reasons explained above, Dr. Noll's Motion for Summary Judgment, Dkt. [84], is
**GRANTED in part and DENIED in part.** It is **granted** with respect to Mr. Ellis' claims
concerning the initial delay in receiving dental care, the quality of his teeth cleaning, and the
treatment of his benign fibroma.  It is **denied** with respect to Dr. Noll's treatment decisions
regarding Mr. Ellis' impacted teeth and the related pain.

The Court **reconsiders** Mr. Ellis' renewed motion for counsel, Dkt. [82], and finds it should
be **GRANTED**.  The Court will attempt to recruit counsel to assist Mr. Ellis through final
judgment.  The Magistrate Judge is requested to hold a settlement conference once counsel has
been recruited.

**SO ORDERED.**

Date: 8/25/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Demajio Jerome Ellis, #166596
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Electronic Service Participant – Court Only

Douglas R. Bitner
STOLL KEENON OGDEN PLLC
Doug.bitner@skofirm.com

Sarah Jean Shores-Scisney
STOLL KEENON OGDEN PLLC (SKO)
sarah.shores@skofirm.com